Deja vu, I suppose. All over again. All right. Good morning again, and may it please the Court. My name is Dana Snigocki, and I'll be arguing this appeal on behalf of the appellant Gregory Landers. I suppose Landers is a character we're slightly familiar with at this point. This is a whole different deal in terms of why he lost. Let me ask you about the sufficiency of his complaint. Okay. I used to like, when I was representing a plaintiff, to give the defense as little information as possible so that they might get sandbagged and not realize what a problem they have. And a great tool for doing that was the forms at the back of the Federal Rules of Civil Procedure, which Alaska uses, too. There's this Form 11, which is just wonderful, complaint for negligence. It's not the same thing as an FLSA complaint, but it gives you an idea. Because the pleading forms, at the very beginning, the Federal Rules say they're sufficient. That's all you have to do, this pre-Twombly, just-notice pleading. You state the jurisdiction, and then it says you have to say the date and the place where the defendant negligently drove a motor vehicle against the plaintiff, and, as a result, the injury, lost wages, pain and suffering, and, of course, medical expenses of blank. Therefore, a plaintiff demands judgment against the defendant for blank, and the forms indicate you're supposed to fill in the blanks. Now, that seems to be what bothered the district judge here. He said, Approximation will do, but this fellow doesn't even approximate. He doesn't even say, I was supposed to work 11, 12 hours a day, and they were just giving me straight time. He doesn't say anything except that there was a violation of the FLSA, basically. Why? And then I thought, when I first started reading this, well, obviously, this should have been a dismissal with leave to amend, not a dismissal without leave to amend. But then I read the plaintiff saying, we don't want to amend. We don't have that information. Well, if they don't want to amend, then they don't get leave to amend. It wouldn't mean anything anyway. So why isn't the complaint insufficient? Because even under the barest pre-Twombly, pre-Iqbal notice pleading, it still didn't say enough about what this lawsuit was for. Well, first off, I would like to address the point regarding the district court not granting leave to amend. I do believe that that is incorrect. The district court should have, absolutely. But you didn't want it. It's true. We did not want it under the standard that the district court. You told the district judge you didn't want it. We did not want it under the standard that the district court was requiring us to plead. Having us be able to plead that kind of specificity, the amount of. He didn't ask for specificity. He asked for approximation. He did ask for the, right, approximate wages owed, the overtime hours that were worked, and I believe it was perhaps the dates on which the plaintiff may have worked. It's just a pleading. It doesn't have to be under oath. It can be an approximation. It doesn't have to be under oath. The plaintiff is without that information. That's information that's contained within the appellee's record. He doesn't have some feel for when he would generally go into work in the morning, coming home at night? Well, I'm – in the kind of work that the appellee does here, you know, he's a blue collar worker. He – they have show-up times. Everybody knows when they set the alarm for and when they leave for work and how long it takes them to get there and how much complaining they're getting from their family about being late for dinner. Everybody knows that kind of thing. I think the complaint does – it does not provide for the approximations, but the appellee – the appellant's position is that it does not require that. There is no requirement. But the judge disagreed with that, and Iqbal and Twombly tell us there has to be some level of detail. You can't just say you owed me overtime, you didn't pay me overtime, I win. There has to be some level of detail. And if you're going to work every single day, you have some inkling as to, you know, I put in a long day to day. You know, a lot of people keep journals as to when they work, especially when they're working overtime. So it's – I find it hard to believe that he wouldn't have some idea of when he was required to work overtime before putting the defendant to the task of bringing forth the records. I understand that. I think, you know, first of all, in the line of work that I do and my firm does, we love the plaintiffs that do keep the journals. Unfortunately, it is very rare. Without the journals, here's the kind of underlying conceptual problem here. I – as you know from my question, I see it the same as Judge Rawlinson. I know when I set my alarm clock and when I look at my watch and think, geez, I better get to court. I know when I set my alarm clock and when I look at my watch and think, geez, I better get to court. I know when I set my alarm clock and when I look at my watch and think, geez, I better get to court. And I know how late I can get home without my wife complaining that I'm late. And I think most people know that kind of thing. But even aside from how much he's likely to know, when you read this complaint, it really doesn't say, I worked a lot of overtime. It says, this company has a procedure which is not consistent with the act. Well, when you're in law school, you walk home from class and you spot torts all over the place. But since you are not the person who suffered an injury from the tort, you're spotting the tort is immaterial to any lawsuit. And this complaint reads kind of like that. He's spotting a company that's not following the rules, but he's not saying they hurt him. Well, he is alleging that he did work more than 40 hours a week. I can point you to paragraph 19 of the complaint. I'm looking at 19. Okay. And he's talking about the compensation system. Right. So it's not he's not talking about himself. With the He could say all the same bad stuff about the bad compensation system. And it would be perfectly consistent to say, but I never worked any overtime myself. I do believe that in paragraph 19, I mean, he does allege that when in fact there were times that he worked over 40 hours per week. Where? I don't think we are looking at. We want the actual language from the complaint. I understand. Your brief and a reference and all that stuff is not as good as actual the thing itself. So I tell my law clerk, source documents. You want a source document. Okay. Paragraph 19 here. It says, The compensation system used by the defendants for the plaintiff, for the plaintiff and those similarly situated, was a de facto piecework no overtime system, meaning that such employees, which would include the plaintiff here, were being paid a certain amount. Not necessarily. I don't know if it's him. I mean, you could say that even though you've never been a cable installer, I assume, I don't really know. Are you a cable guy? I'm not a cable guy. You could say and probably did say that this company has an illegal compensation system and that its employees are working overtime without getting time and a half that they're entitled to. Even though you've never worked there. And he could say it, too. I think if you look at the second line here, the first line says the compensation system used by the defendants for the plaintiff and for those similarly situated. So there he's saying which compensation system. That's about the system, not about how he's doing it. Correct. Which compensation system applied to him. So on line 24 and 25 is where you come the closest. You said they failed to pay any overtime wages on the additional and substantial portion of the earnings of the plaintiff. That's the closest you come. Yes. And I'm not sure that's close enough. Because you know what? Let me ask you this. I'm particularly puzzled by the fact that Landers filed a declaration in response to Qualities' motion to dismiss. And looking at paragraph 5 of that declaration where more detail is given, I mean, during that period I was not paid piece rate, but a training wage of about $8 an hour. The daily shift was typically between 10 and 12 hours, yet they paid me only for 8 hours. I mean, that's more detail, but that was never – that's absent from his complaint. It is true that that is absent from the complaint, but the complaint is filed just really to put Quality on notice of – Right. But once you were aware that maybe this was insufficient, why didn't you ask the Court to allow you to amend and put the kind of thing in the complaint that you put in the response to the motion to dismiss? Well, I believe that we didn't think that kind of sufficiency was necessary for the complaint. Well, why would you put it in a declaration if you didn't think it was necessary? Well, necessary for the complaint. Why wouldn't you do it anyway, unless this action is just for the lawyers instead of for the plaintiffs? I mean, if it's just for the lawyers, you'd rather not limit it to one plaintiff's piddly little overtime, possibly, if your best – if your only guy who's come forward is owed $742, it's sort of not worth fooling with, and you don't want the defendants to know they've got such a small deal that they're facing. I can't see why you would write a complaint this way and refuse to amend it, unless the only party seeking money is the attorneys for representing a whole bunch as opposed to a plaintiff trying to get his time and a half. I mean, if you did plead the way that form that I read you at the beginning of the argument says to plead, it would make it perfectly obvious that they could just give you an offer of judgment for a little more than your claim and it would be over. And I can't see why you wouldn't do that and get the money for the client, unless this case isn't for the client. It's for the lawyers. Well, no. It's not just – the case is not about the lawyers. The case was filed as a putative collective action. So it was on behalf of not just Landers, but all the other installers who worked for Quality. That is really the foundation of the complaint here. And I do want to note, you know, the notation in the appellant's opening brief about not seeking leave to amend or, you know, feeling that amending the complaint wouldn't matter really comes down to the kind of specificity that the district court was requiring. It's just something that Landers cannot give. The district court's order specifically stated factual – that in order to properly plead this FLSA claim, he would need to include factual allegations that provide for an approximation of the overtime hours. Approximation. So he could say, gee, you know, judging from when I left for work and when I got home ordinarily and how long the drive takes, I must have been working 2, 3 hours a day of overtime every day for 8 months. And that gives you a good approximation, and push it up a little bit on the assumption you might have left something out, and then you can amend up or down as you get some more information and discovery. Another thing – okay. I do understand that, but it wasn't only the approximation of Al's work that the district court was requesting. He also had – Wage rate would matter, too. I mean, if he gets $9 an hour or $14 an hour, that will affect what time and a half is. And I would think he would have to do that. I think he'd know his wage rate. He doesn't know his wage rate. The problem is, is that Mr. Landers works under a piecework system. And under a piecework system, he's paid for each specific piece. So he knows how many installations he does each day. Right. But each thing is paid at a different dollar amount. So his piece rate earnings will vary day to day. They'll vary hour to hour. They'll vary day to day. And his regular rate will fluctuate from week to week. He doesn't have a regular hourly rate. Oh, it's not like $400 per installation? No. He is paid $2 to, you know, put this plug in the wall. I'm inventing this, obviously. $5 for something else. So he is never paid the same amount of money every day. He is never paid the same amount of money every week. He could not specify with even an approximation what his regular hourly rate would be. It is going to fluctuate. So on the weeks where, you know, the company is dead and there's not a lot of business, his regular hourly rate would be significantly lower than it would be on days where he has a lot of work and he's working. Is there something in the record that shows this? I had assumed it would be per installation. I didn't realize it. Well, we don't have the record. We didn't even get to a discovery case. We don't have any indication. I mean, this is just what the plaintiff alleges, that he was paid on a piecework basis. We didn't have an opportunity to get there. He got pay stubs, right? I mean, he knew. I don't even know that he had. He may have had one or two pay stubs that he kept, but he did not. We didn't have the whole slew of them to present and do an analysis and say, okay. I mean, the checks from the company are direct deposits to show dollars, and he knew how many hours. Well, he might not have known. That's the other thing is that even if he knew, you know, in this week he earned $1,500, if his pay stubs don't show how many hours he worked or if he doesn't even retain those pay stubs at the time he files the complaint, he would not be able to approximate his hourly wage, the amount of overtime hours he worked. Any amount of monthly overtime wages. Do we have a sworn declaration? Sorry? These things that you're saying now sound extraordinary to me. Do we have a sworn declaration from your client that says he may be in opposition to the motion to dismiss? Yes. There is a sworn declaration that specifies how he was paid. I know it specifies it. It's all statutory terms. It's the kind of thing that I could draft for an imaginary client. I didn't see anything that says here's why I can't approximate my pay. But I might have missed it. So I'd like you to point it. Well, I don't know that there's any language in there that includes that he cannot, because the decision requiring him to approximate this only came after the motion to dismiss. So he had no basis to specify here's why I can't make an approximation. He didn't know that an approximation was required of him. All right, counsel. You're almost out of time. I am. We'll give you a minute or two for rebuttal. Thank you. We'll hear from the defense. Yes, Your Honors. Melanie Kochka again for Quality Communications. You were inquiring whether there were the piece rates were in the file and the record they are. They're located at SE 12 through 19. They're called pay structure sheets. And on these sheets are listed the pieces or the rates for the different tasks that the installers perform. And it's also an acknowledgment signed by Mr. Lander saying he acknowledges that it's his responsibility to keep time and time has to be accurate. And also that he acknowledges he is paid a piece rate plus overtime system. And indeed, the payroll records which we put in with our motion to dismiss show that he was paid overtime for the weeks when he worked over 40 hours a week. Judge Gilman, you talked briefly about paragraph 5, I think, of his affidavit. The problem with this and the reason why I think he has not made a bigger presentation about his estimates in paragraph 5 are that all of these allegations about the training period occurred outside the statute of limitations. He filed his action in December 2011. These events, if they were even true, would have occurred back in September 2009. And so they would have been beyond the two-year statute. Even then, you can't tell from this paragraph that he worked over 40 hours in a week. He says he regularly worked with other installers and their shift varied between 10 to 12 hours. Sometimes he got a lunch break, sometimes he didn't. Even using the arithmetic that he uses in this section, you don't automatically get to any work week that he worked over 40 hours and wasn't paid overtime. And so I think that that's probably the declaration is that SE4. 53 to 55. But the district court, of course, didn't reach this. We had moved for summary judgment as an alternative basis, but the district court did not go that far. The district court relied on the complaint because there is a growing body of law in the district courts in Nevada that are requiring these wage and hour suits to allege an approximate amount of hours worked and overtime pay and the hours, the overtime hours. I don't know if I would go that far, but I think there has to be a little more detail. How much detail would meet the Iqbal and Twomley standards, I'm not sure. But I'm not sure that each employee would be able to give a detailed approximation of the number of hours worked and the wages, but should be able to give a little more detail other than I just worked overtime. Yes, Your Honor. And the other district court case is Hernandez v. Hillsborough Enterprises. It is cited in a Rule 28J letter that we submitted to the court. Is it your understanding also that the plaintiff declined to amend the complaint when given the opportunity to do so? Yes. Yes. And he is quite candid in his briefs that he does not want another opportunity. He states on page 25 of his opening brief that he does not seek leave to amend his complaint because he cannot be any more specific. He admits in footnote 6 on that same page that without discovery he cannot prove any damages. On page 5 of his reply he admits Landers provides no such hours worked and overtime owed statement in his complaint because he cannot in good faith provide one. Thus candidly, contrary to Iqbal, he is trying to unlock the doors of discovery with nothing more than conclusions. I have brought to your attention a Second Circuit case that just came out. It's called DeJesus. The HF Management Services. This declaration, I'm not really clear. Is paragraph 5 of the declaration, is that all the time barred by the limitations? Yes, Your Honor. And that's why he's saying that. That is approximation. In that paragraph he says his daily shift was typically between 10 and 12 hours, often no lunch break. He only got paid for 8. His rate was $8 an hour, so he was working more than 40 hours a week without overtime. That is just what the district judge was looking for in the complaint. But at and that is an approximation, but that's not the approximation for the period covered by the complaint? No, Your Honor, it's not. And that's why there are no timeframes. He refers to this training wage, but he doesn't tell you when he was making that training wage, and I think it was a very deliberately calculated on his lawyer's part because it's outside the statute of limitations. And if he put a date on it, it would be easy to see that and to point that out to the court. Do you agree, by the way, that as far as I can tell, this is somewhat a case of first impression in the Ninth Circuit, isn't it, in that the Ninth Circuit, I couldn't find a case that's confronted this precise question of how much does the plaintiff have to plead in a Fair Labor Standards Act case? Are you aware of any cases? No, Your Honor, I think you're right. In terms of the district court's adoption of this approximation of the hours worked and the rate, I think this is new for the Ninth Circuit. I could not find any case that addressed it specifically either. But that's why it's important for you to look at the Pruol case from the First Circuit and this DeJesus case, which I was just about to tell you from the Second Circuit, because the Second Circuit adopted precisely the same test that our district courts are using in Nevada. They say it's a context-specific task and that the complaint was devoid of any numbers other than the numbers lifted from the statute, which is the 1.5 times the rate over 40. And that's exactly what he alleges in paragraph 24 of his complaint. It's just the statute. What about the declaration language that Judge Kleinfeld read to you? If it were timely, would that meet the pleading requirement that's been articulated by the Nevada district court? I think it would. If he clearly says he worked over 40 hours a week and he gives you an estimation of the hours and what he was paid and why that doesn't comply with this statute, I think that does meet the criteria. But so your position is that he is unable to amend the complaint to include that type of detail for the years in question? Correct. And one of the things the DeJesus court pointed out was that in the case of the plaintiff, in that case too, the lawyer or the plaintiff was offered an opportunity to be more specific, and that lawyer turned it down as well. And the Second Circuit said this, while we would like to believe that the decision not to amend was made for some reason that benefited DeJesus rather than as an effort on counsel's part to obtain a judicial blessing for plaintiff's counsel in these cases to employ this sort of bare-bones complaint. And that's exactly what I think is going on here. Mr. Greenberg wants a blessing from this court that the degree of specificity he put in the complaint is okay, that he doesn't have to allege anything more. And that's because he's not really bringing this case on behalf of Mr. Landers. He's bringing the case on behalf of this class that he hopes that can be conditionally certified. What page is that you were reading from in DeJesus? In the DeJesus case, it's at page 90. And the site is 726 Bed 3rd, 85. Right. Came out in August of this year. So, anyway, we have two circuit decisions on this issue now. We have the first and we have the second. We hope that the ninth will soon follow. The other thing I wanted to briefly raise about Mr. Landers is that we also have a claim preclusion argument because Mr. Landers sued Quality in December 2011 in Federal Court and then went over State court on March, in March 2012. It looks to me like you're trying to get res judicata from a judgment that's not final. Is it? At least when you were briefing it. Okay. And you don't get res judicata from a non-final judgment. Well, it is final under Nevada law. Under Nevada law, until it has been reversed on appeal, the judgment is viewed as final from the district court. I don't think they give you res judicata effect from it under Nevada law, do they? Yes, they do. They do specifically in the Nevada case, which is on point, is the five-star capital core v. Ruby case. There are only three elements for claim preclusion. One is the parties are the same, the final judgment is valid, and the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case. The Nevada Supreme Court has said that in the Gandor case that a judgment is final until it's reversed on appeal. So they do give res judicata effect to the lower court judgment. But in Landers' judgment, it wasn't a judgment on the merits, it was just a judgment that the Court lacked jurisdiction because he had not yet exhausted his administrative claim, and the Court could entertain the claim on the merits after he exhausted his administrative process. That was the holding, Your Honor, but the Court did issue a summary judgment, and it is a judgment under Nevada law. Well, we don't have to get to that issue unless we do. Correct. Unless you reverse the district court on the Iqbal finding, you don't have to. Well, was this issue raised to the district court, or was the Nevada case not final when it was at the district court level? It was not final when it was before the district court. It came out afterwards, and that's why we put it in our supplemental excerpts of Brethren. But what we could do is if we decide to, and I'm just speaking for myself and I'm just amusing, if we decided to vacate in remand to the district court, the district court could also consider the res judicata issue. That's true. All right. Okay. Unless you have any questions of me, I think I'm through. Thank you. All right. We'll give you one minute for rebuttal. Okay. I wanted to quickly discuss the appellee's counsel mentioned that the time that is approximated or the hours worked that were specified in the declaration, that there was some kind of basis for not including a date, because that date was outside of the statute of limitations. The FLSA actually enjoys a 2-year statute of limitations as default, but there is a potential for a 3rd year if the plaintiffs can show that there was a willful violation, meaning the FLSA could not include a date. Why wouldn't you plead this paragraph 5, Supplementary Excerpts 54, why wouldn't you just plead that in a complaint? It's just what the district judge asked for. The district judge asked for it in his decision. We were not aware that that was a requirement. There was no authority in this circuit that such specificity is a requirement. The district judge, in his order, relied on the judgment was entered. It was entered without leave to amend, and at that point, we filed the appeal. Well, but in your brief, you say that you think the district court applied the incorrect standard and you don't seek leave to amend. Right. We do not seek leave to amend under that standard, because as I explained before, it would be impossible for us to give the kind of specificity that the district judge required. What's in that declaration is not all of the specificity that the district judge required. He required a lot more. He required factual allegations providing for an approximation of the overtime hours' worth, meaning every hour that Ms. O'Leary was there. That's your best guess, but some specificity. If we think that that's sufficient, why wouldn't you take a chance at least to try to appease the district court and satisfy the request for specificity? I don't understand. Well, perhaps we could have – perhaps we could have on that, but there was also this separate – these other two separate requirements that he plead his hourly wage and the amount of unpaid overtime wages that were owed. That was an impossibility at the – where we were with the record. There was no record in discovery. There was – that information could have been supplemented in Rule 26 of the sclera, but at the pleading stage, there was no way. So you're saying that your client had no idea what his hourly wage was? Absolutely not. His hourly wage was a straight piece of it. He must have had some idea how much money you made. I mean, when you – when you try to buy things, you think about how much money you make and whether you can afford it. It's true. His paychecks would vary from week to week. Like I explained, he was paid –  That would be nice. No, certainly. I mean, it would be on a smaller scale, but for him to be able to come up with an hourly wage – But if – okay, if you, as the attorney, ask somebody, how much is your paycheck every week, and they say anywhere between $1,800 or every two weeks or every month, between $1,800 and $2,000, how many hours a week do you approximately work? And you do the math. I suppose in that sense, there could have been something that came up. But as I explained, in the Peaceburg realm, there is no, you know, typical hourly wage. It's not like we're talking about an hourly worker who makes $10 an hour. Well, that's not true. I worked in a factory for much of my younger life, and there is. You get a set hourly wage, and then additional money is added onto that, depending on your productivity. So you can take the final salary that you get and divide that by the number of hours that you worked, and that gives you your hourly wage. I don't believe that there was any actual hourly wage paid to the plaintiff. Any other questions? All right. Thank you, counsel. Thank you to both counsels. Thank you very much. The case just argued is submitted for decision by the court. That completes our calendar for the week. We are adjourned.
judges: Kleinfeld, Gilman, Rawlinson